**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

David Anthony Salazar,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-17-1132-PHX-JAT (JFM)

**Report & Recommendation**
**on Petition for Writ of Habeas Corpus**

## I.  MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Kingman, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 14, 2017 (Doc. 1).  On July 3, 2017, Respondents filed their Limited Answer (Doc. 13).  Petitioner filed a Reply on August 9, 2017 (Doc. 19).

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.  RELEVANT FACTUAL & PROCEDURAL BACKGROUND
## A.  FACTUAL BACKGROUND

The Presentence Investigation Report summarized the factual background as follows:

> On July 23, 2011 at 11:25 p.m., police responded to the defendant's house in reference to a domestic disturbance. The defendant was not present when police arrived and his wife, [H.S.], explained an argument had ensued ·after their eleven-year old daughter (victim) informed her that the defendant had been molesting her.

1

* * *

On April 26, 2012 the defendant was taken into custody for this matter.  During an interview, he denied ever touching his daughter and stated his children were telling these lies because they hated him.

(Exhibit O, at 1-2.)  (Exhibits to the Answer, Doc. 13, are referenced herein as "Exhibit ___.")

## B.  PROCEEDINGS AT TRIAL

On May 4, 2012, Petitioner was indicted in Maricopa County Superior Court on 10 counts of sexual conduct with a minor, one count of public sexual indecency to a minor, and one count of furnishing obscene or harmful items to a minor.  (Exhibit F, Indictment.)  The state filed an Allegation of Prior Felony Conviction (Exhibit H), alleging priors including theft and escape, and an Allegation of Aggravating Circumstances (Exhibit I), alleging harm to the victim, abuse of trust, multiple victims, and victims of young age.

Petitioner eventually entered into a written Plea Agreement (Exhibit J), agreeing to plead guilty to one count of attempted sexual conduct with a minor, and two amended counts of attempted molestation of a child, with the stipulation that Petitioner would be sentenced to no less than the presumptive term on the sexual conduct charge, and lifetime probation on the attempt charges. The remaining charges and allegations of priors were to be dismissed. Petitioner entered his change of plea on October 1, 2013. (Exhibit K, M.E. 10/1/13; Exhibit L, R.T. 10/1/13.)

On November 7, 2013, the trial court sentenced Petitioner to the maximum term of 15 years on the attempted sexual conduct charge, and suspended sentences and lifetime probation on the other charges. (Exhibit P Sentence 11/7/13; Exhibit Q, R.T. 11/7/13.)

## C.  FIRST THREE PROCEEDINGS ON POST-CONVICTION RELIEF
### 1.  First PCR Proceeding

Thirty-two days after sentencing, Petitioner commenced his first post-conviction

relief ("PCR") proceeding on December 9, 2013, by filing his first Notice of Post-Conviction Relief (Exhibit R).  Counsel was appointed (Exhibit S, M.E. 12/26/13), but ultimately filed a Notice of Completion (Exhibit T) evidencing an inability to find an issue for review.  Counsel was ordered to remain in an advisory capacity, and Petitioner was granted leave to file a *pro per* PCR petition.  (Exhibit U, M.E. 6/24/14.)

On September 23, 2014, Petitioner filed his *pro per* PCR Petition (Exhibit W), arguing a denial of due process in the application of aggravating factors based on double counting and lack of notice, violation of due process based on a breach of the plea agreement, and ineffective assistance of counsel based on a failure to investigate and counsel's illness.  After briefing, on February 18, 2015 the PCR court summarily denied the claims on the merits.  (Exhibit Z, Order 2/18/15.)

Petitioner then sought two extensions of time to petition for review, ultimately being granted through July 24, 2015 to file a petition for review.  (Exhibit AA, Motion; Exhibit BB, Order 4/13/15; Exhibit CC, Motion; Exhibit EE, Order 7/7/15.)

Petitioner alleges in the Petition that he subsequently sought review of his first PCR proceeding by the Arizona Court of Appeals (Doc. 1 at 5).  Petitioner makes no assertion that a petition for review was timely filed, but instead argues in his reply that after the dismissal of his first PCR proceeding he was transferred between prison units, had limited legal resources, and floundered until moving to the prison in "Kingman February 27, 2017," where he "found a jailhouse lawyer who misfiled a Petition for Review [Doc #98]."  (Reply, Doc. 19 at 6-7 (bracketed information in original).)

In fact, on February 27, 2017, Petitioner did make a filing with the Arizona Court of Appeals, when he filed his "Notice of Appeal" (Exhibit KK).  This notice did not reference the PCR court decision of February 18, 2015, but instead sought to appeal the judgment "entered in the Superior Court in Maricopa County, on October 1, 2013."

Petitioner also filed, on March 9, 2017 a "Petition for Review" (Exhibit MM), but this also sought review of "the decision of the trial court in the above-entitled cause entered January 7, 2013" (the date of sentencing).  That petition made no reference to the

February 18, 2015 order on the PCR petition.  The Arizona Court of Appeals ultimately construed it as seeking review of the dismissal of the Petitioners' second and third "petition for post-conviction relief on January 4, 2017."  (Exhibit NN, Order 3/22/17.)

Thus, Petitioner certainly did not seek timely review of the denial of his first PCR petition, and the undersigned finds that Petitioner never sought review of the denial at all.

**2.  Second and Third PCR Proceeding**

On November 21, 2016, over 21 months after dismissal of the first PCR proceeding, Petitioner commenced his second PCR proceeding by filing his second PCR Notice (Exhibit FF).  He subsequently filed a third PCR Notice (Exhibit GG) on December 19, 2016.

On January 4, 2017, the PCR court summarily dismissed these proceedings.  The court found the notices untimely.  Although noting that Petitioner relied on the exceptions to the timeliness rule for newly discovered material facts, the PCR court found that the exceptions did not apply because: (1) the new discoveries were merely of claims, not facts; (2) no diligence was shown; (3) Petitioner did not show counsel was also unaware of any new facts.  The court then dismissed the proceedings pursuant to "Arizona Rule of Criminal Procedure 32.2(b)", the provision providing exceptions to the time and waiver bars.  (Exhibit HH at 3.)

On January 9, 2017, Petitioner filed a "Supplemental Rule 32 Notice Petition for Post-Conviction Relief" (Exhibit II).  On January 31, 2017, the PCR court struck this as an unauthorized supplement, and on the basis that it asserted new, untimely claims. (Exhibit JJ, Order 1/31/17.)

On March 9, 2017 (65 days after the dismissal order), Petitioner filed a Petition for Review (Exhibit MM), which as discussed hereinabove, purported to seek review of "the decision of the trial court in the above-entitled cause entered January 7, 2013." However, the Arizona Court of Appeals construed it as seeking review of the dismissal

of Petitioner's second and third "petition for post-conviction relief on January 4, 2017." (Exhibit NN, Order 3/22/17.)   On March 22, 2017, the Petition for Review was dismissed as untimely, having been filed more than 30 days after the PCR court's order. (*Id.*)

## D.  PROCEEDINGS ON DIRECT APPEAL

Meanwhile, on February 27, 2017, Petitioner filed the above referenced "Notice of Appeal from Superior Court" (Exhibit KK), appealing his conviction.  On March 8, 2017, the appeal was dismissed as untimely. (Exhibit LL, Order 3/8/17).

## E.  FOURTH PROCEEDING ON POST-CONVICTION RELIEF

The following month, on April 17, 2017, Petitioner commenced his fourth PCR proceeding by filing a "Petition for Leave to File an Untimely Petition for Post-Conviction Relief" (Exhibit OO).   The PCR Court construed this as a PCR Notice asserting a claim based on newly discovered material facts, and on June 12, 2017 dismissed it as without merit. (Exhibit PP, Order 6/12/17.)

## F.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** – In the meantime, just before commencing his fourth PCR proceeding, Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 14, 2017 (Doc. 1).  Petitioner's Petition asserts the following three grounds for relief:

> In Ground One, Petitioner claims that he was denied due process because the attempted molestation counts were not charged in the indictment. He contends that in the plea agreement, the State changed the charges from sexual conduct to attempted molestation.
> In Ground Two, Petitioner asserts that the trial court abused its discretion by aggravating his sentence. He contends that the trial court "never established two or more aggravating factors on the record," alleging that the trial court used elements of the offense to aggravate his sentence, but "did not establish how either could be aggravating enough to escape the presumptive sentence."
> In Ground Three, Petitioner claims that the trial court illegally imposed two terms of lifetime probation. He asserts that the trial court "never explained for the record why it imposed two terms

of lifetime probation nor did it cite any authority [that] it relied upon to impose the terms."

(Service Order 5/26/17, Doc. 5 at 2.)

**Response** - On July 3, 2017, Respondents filed their Limited Answer (Doc. 13). Respondents argue that the petition is untimely, Petitioner's state remedies are procedurally defaulted, Ground 2 and 3 are state law claims not cognizable on habeas,[1] and Ground 1 was waived by his guilty plea.

**Reply** - On August 9, 2017, Petitioner filed a Reply (Doc. 19). Petitioner concedes his Petition is untimely, but argues that the AEDPA does not apply to him because he is not a terrorist (*id.* at 9), and he is entitled to equitable tolling because of his prison moves and resulting lack of resources and confusion and his diligence in pursuing his state remedies (*id.* at 12-13, 15). He further argues he is entitled to statutory tolling. (*Id.* at 13.)

Petitioner further argues that any failure to properly exhaust his state remedies should be excused because of his lack of legal resources, and the absence of a hearing on his claims. (*Id.* at 14-16.)

Petitioner argues he should have an evidentiary hearing and counsel appointed.

### III.  APPLICATION OF LAW TO FACTS
#### A.  TIMELINESS
#### 1.  One Year Limitations Period

Respondents assert that Petitioner's Petition is untimely. As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts. 28 U.S.C. § 2244(d). Petitions filed beyond the one year limitations period are barred and must be dismissed. *Id.*

---

[1] The Court's service Order (Doc. 5) did not identify the federal nature of the claims in Grounds 2 and 3. The federal nature is not made explicit in the Petition or the Reply.

Petitioner argues that he cannot be subject to this limitation because he was not charged with a crime of terrorism. However, nothing in the AEDPA restricts the habeas statute of limitations to crimes of terrorism, or any other particular crimes. Rather, the one year time limit applies broadly to "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." *See* 28 U.S.C. § 2244(d)(1). "[T]he title of a statute and the heading of a section cannot limit the plain meaning of the text." *Bhd. of R. R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 528–29 (1947). The instant petition is one for a writ of habeas corpus, and Petitioner is in custody pursuant to the judgment of a state court. Thus, Petitioner is subject to the limitations period.

## 2. Commencement of Limitations Period

### a. Conviction Final

The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[2]

For an Arizona noncapital pleading defendant, the conviction becomes "final" at the conclusion of the first "of-right" post-conviction proceeding under Rule 32. "Arizona's Rule 32 of-right proceeding for plea-convicted defendants is a form of direct review within the meaning of 28 U.S.C. § 2244(d)(1)(A)." *Summers v. Schriro,* 481 F.3d 710, 717 (9th Cir. 2007). "To bring an of-right proceeding under Rule 32, a plea-convicted defendant must provide to the Arizona Superior Court, within 90 days of conviction and sentencing in that court, notice of his or her intent to file a Petition for Post-Conviction Review." *Id.* at 715 (citing Ariz. R.Crim. P. 32.4(a)).

---

[2] Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D). Except as discussed hereinafter, Petitioner proffers no argument that any of these apply.

7

Here, Petitioner's sentence was issued on November 7, 2013. His first PCR proceeding was filed on Monday, December 9, 2013, and thus was a timely, of-right PCR proceeding.

That proceeding remained pending until July 24, 2015, when Petitioner's extended time to file a petition for review expired. (*See* Exhibit EE, Order 7/7/15.) Petitioner did not file such petition for review, and thus his conviction became final on July 24, 2015, with the expiration of time for review.

For purposes of 28 U.S.C. § 2244, "direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). The Supreme Court "can review, however, only judgments of a 'state court of last resort' or of a lower state court if the 'state court of last resort' has denied discretionary review." *Gonzalez v. Thaler*, 565 U.S. 134, 154 (2012) (citing U.S. Sup.Ct. R. 13.1 and 28 U.S.C. § 1257(a)). Here, Petitioner did not seek direct review by the Arizona Supreme Court. Accordingly, the time for seeking a writ of certiorari with the U.S. Supreme Court cannot be considered in determining when Petitioner's judgment became final. *Id.*

Thus, Petitioner's one year began running on July 25, 2015, and without tolling, expired one year later, on July 24, 2016.[3]

### b.  Newly Discovered Facts

Although the conclusion of direct review normally marks the beginning of the

---

[3] Respondents calculate the expiration date as one day later, on July 25, 2016. (Answer, Doc. 13 at 15.) For purposes of counting time for a federal statute of limitations, the standards in Federal Rule of Civil Procedure 6(a) apply. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Rule 6(a)(1)(A) directs that the "the day of the event that triggers the period" is excluded. Thus, the one year commenced the day after Petitioner's conviction became final, or on July 25, 2015 (day one), and the last day was 364 days later, on July 24, 2016. *See Patterson v. Stewart*, 251 F.3d 1243 1246 (9th Cir. 2001) (applying "anniversary method" under Rule 6(a) to find that one year grace period from adoption of AEDPA statute of limitations, on April 24, 1996, commenced on April 25, 1996 and expired one year later on the anniversary of such adoption, April 24, 1997).

statutory one year, section 2244(d)(1)(D) does provide an alternative of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Thus, where despite the exercise of due diligence a petitioner was unable to discover the factual predicate of his claim, the statute does not commence running on that claim until the earlier of such discovery or the elimination of the disability which prevented discovery.

Thus, the commencement is not delayed until actual discovery, but only until the date on which it "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

Petitioner has repeatedly complained that he was only able to discovery claims when his access to legal resources (including a jailhouse lawyer) were improved upon transfer from prison to prison.

However, it is only the facts whose belated discovery is a trigger, not their legal significance. *Hasan v. Galaza*, 254 F.3d 1150, 1154 n. 3 (9th Cir. 2001). *See also* Means, *Federal Habeas Manual* § 9A:34 (citing Hasan and *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)). The rationale is well put by the Seventh Circuit:

> Like most members of street gangs, Owens is young, has a limited education, and knows little about the law. If these considerations delay the period of limitations until the prisoner has spent a few years in the institution's law library, however, then § 2244(d)(1) might as well not exist; few prisoners are lawyers.

*Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000), *as amended* (Jan. 22, 2001).

Petitioner has proffered nothing to suggest that he has only recently discovered the relevant facts of his claims, only an understanding of their legal significance. That is not sufficient to trigger the later start date of § 2244(d)(1)(D).

Thus, the finality of his conviction remains the proper commencement date for his habeas limitations period.

### c.   Conclusion re Commencement

Therefore, Petitioner's one year began running on July 25, 2015, and without

9

tolling, expired one year later, on July 24, 2016

### 3. Timeliness Without Tolling

Petitioner's Petition (Doc. 1) was filed on April 14, 2017.

However, the Petition includes an avowal that it was "placed in the prison mailing system on 04-11-17." The envelope (Doc. 1-1) reflects a postage mark dated April 11, 2017. "In determining when a pro se state or federal petition is filed, the 'mailbox' rule applies. A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010). Respondents proffer nothing to counter Petitioner's avowals, and thus the undersigned finds that Petitioner's Petition must be deemed filed as of April 11, 2017.

As determined in subsection (2) above, without any tolling Petitioner's one year habeas limitations period expired no later than July 24, 2016, making his April 11, 2017 Petition over eight months delinquent.

### 4. Statutory Tolling

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). This provision only applies to state proceedings, not to federal proceedings. *Duncan v. Walker*, 533 U.S. 167 (2001).

**Properly Filed** - Statutory tolling of the habeas limitations period only results from state applications that are "properly filed," and an untimely application is never "properly filed" within the meaning of § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).

On the other hand, the fact that the application may contain procedurally barred claims does not mean it is not "properly filed." "[T]he question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar." *Artuz v.*

*Bennett*, 531 U.S. 4, 9 (2000). Therefore, even if the state court provides alternative grounds for disposing of the state application, a ruling that the application was untimely precludes it from being "properly filed" and tolling the limitations period. *Carey v. Saffold*, 536 U.S. 214, 225-26 (2002).

Moreover, if the state court summarily disposes of a state application without identifying if it was on timeliness grounds, or otherwise fails to give a clear indication whether it has deemed the application timely or untimely, the federal habeas court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." *Evans v. Chavis*, 546 U.S. 189, 198 (2006).

For purposes of applying the "properly filed" requirement of § 2244(d), the federal courts look to the "last reasoned decision" of the state courts. *Curiel v. Miller*, 830 F.3d 864, 869 (9th Cir. 2016).

**Mailbox Rule** - For purposes of calculating tolling under § 2244(d), the federal prisoner "mailbox rule" applies. Under this rule, a prisoner's state filings are deemed "filed" (and tolling thus commenced) when they are delivered to prison officials for mailing. In *Anthony v. Cambra*, 236 F.3d 568 (9th Cir. 2000), the Ninth Circuit noted:

> [I]n *Saffold v. Newland*, 224 F.3d 1087 (9th Cir.2000), we squarely held that the mailbox rule applies with equal force to the filing of state as well as federal petitions, because "[a]t both times, the conditions that led to the adoption of the mailbox rule are present; the prisoner is powerless and unable to control the time of delivery of documents to the court." *Id*. at 1091.

*Id*. at 575.

Similarly, the "mailbox rule" applies to determining whether an Arizona prisoner's state filings were timely. Although a state may direct that the prison mailbox rule does not apply to filings in its court, *see Orpiada v. McDaniel,* 750 F.3d 1086, 1090 (9th Cir. 2014), Arizona has applied the rule to a variety of its state proceedings. *See e.g. Mayer v. State,* 184 Ariz. 242, 245, 908 P.2d 56, 59 (App.1995) (notice of direct appeal); *State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App.1999) (PCR notice); *State v. Goracke*, 210 Ariz. 20, 23, 106 P.3d 1035, 1038 (App. 2005) (petition for review to

Arizona Supreme Court).

**Application to Petitioner** - Petitioner's limitations period commenced running on July 25, 2015 and expired on July 24, 2016. Petitioner's second PCR proceeding was not commenced until November 21, 2016, when Petitioner filed his second PCR Notice (Exhibit FF).[4] At that time, his one year had been expired for almost four months. Once the statute has run, a subsequent post-conviction or collateral relief filing does not reset the running of the one year statute. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003). Accordingly, Petitioner has no statutory tolling resulting from his second PCR proceeding, or from his third or fourth, nor from his untimely notice of appeal.

Furthermore, Petitioner's second and third PCR petitions were deemed untimely. (*See* Exhibit HH, Order 1/4/17.) Likewise his Petition for Review was dismissed as untimely. (*See* Exhibit NN, Order 3/22/17.) As was his attempted direct appeal. (*See* Exhibit LL, Order 3/8/17.) Accordingly, these proceedings could not have, in any event, tolled the running of the statute of limitations.

Consequently, Petitioner is not entitled to any statutory tolling, and his April 11, 2017 Petition was over eight months delinquent.

**5. Equitable Tolling**

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'" *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2)

---

[4] Even if deemed delivered to prison officials, and thus filed as of the date of Petitioner's signature, November 15, 2016 (Exhibit FF at 2), this notice would still have been four months after Petitioner's one year expired.

that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.).

Even if extraordinary circumstances prevent a petitioner from filing for a time, equitable tolling will not apply if he does not continue to diligently pursue filing afterwards. "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2nd Cir. 2000).

Petitioner bears the burden of proof on the existence of cause for equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner argues he is entitled to equitable tolling because he is *pro* se, untrained, dependent upon ineffective jailhouse lawyers, and had limited access to legal research materials as a result of his prison relocations. (Petition, Doc. 1 at 11; Reply, Doc. 19 at 14.)

"It is clear that *pro se* status, on its own, is not enough to warrant equitable tolling." *Roy v. Lampert,* 465 F.3d 964, 970 (9th Cir. 2006). A prisoner's "proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim." *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000). *See also Rasberry v. Garcia,* 448 F.3d 1150, 1154 (9th Cir. 2006) ("a *pro se* petitioner's lack of

legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").

This circuit has found that a lack of access to legal resources may be an extraordinary circumstance warranting equitable tolling. *See, e.g., Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (*en banc*) (finding that unavailability of a copy of the habeas statute of limitations in a prison law library could be grounds for equitable tolling). However, in cases where courts have found that an extraordinary circumstance might exist, the petitioner always pointed to specific materials to which he did not have access. *See, e.g., Roy v. Lampert*, 465 F.3d 964, 974 (9th Cir. 2006) (finding that lack of access to AEDPA materials and Oregon law books may be an extraordinary circumstance); *Mendoza v. Carey*, 449 F.3d 1065 (9th Cir. 2006) (finding that lack of access to Spanish language legal materials or assistance could entitle habeas petitioner to equitable tolling).

Here, however, Petitioner points to no specific materials to which he lacked access.  In particular, he fails to point to any lack of materials necessary to the filing of a federal habeas petition, or a lack of access to the federal habeas statute of limitations.

Moreover, Petitioner managed (albeit after his one year expired) to file a series of state petitions raising various claims.  He proffers no rationale for why he was able to file those petitions, but not his federal petition.

Petitioner might point to his obligation to exhaust state remedies.  However, the Supreme Court has observed that a habeas petitioner can file a protective federal petition and then seek to continue to exhaust his state remedies.  In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Supreme Court analyzed the potential catch-22 between the habeas limitations period and the exhaustion requirement, where a state petitioner has filed a state post-conviction relief proceeding which may ultimately be deemed untimely, thus not properly filed, and resulting in the expiration of his habeas limitations period.  "A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey

14

the federal habeas proceedings until state remedies are exhausted." *Id.* at 416. Petitioner proffers no reason why this avenue was not available to him.

In sum, Petitioner fails to show that his ability to file a timely federal habeas petition was the result of a lack of access to legal resources.

**6.  Actual Innocence**

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013).  To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' " *Id.*  at 1936 (quoting *Schlup,* 513 U.S. at 316).

Petitioner makes no such claim of actual innocence in this proceeding as a basis to avoid the statute of limitations.

Petitioner does generally assert that he was not guilty.  But those claims are supported only by Petitioner's own protestations of innocence.  To establish a claim of actual innocence, a Petitioner must support his claim with "new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324.   Petitioner's own, self-serving, post-trial protestations of innocence are not the type of reliable evidence which create a likelihood that no reasonable juror would have convicted him.

/ /

/ /

15

**7.  Summary re Statute of Limitations**

Petitioner's one year habeas limitations period commenced running on July 25, 2015 and expired on July 24, 2016, making his April 11, 2017 Petition over eight months delinquent.  Petitioner has shown no basis for statutory tolling or equitable tolling, nor actual innocence to avoid the effects of his delay.  Consequently, the Petition must be dismissed with prejudice as untimely.

**B.  EXHAUSTION, PROCEDURAL DEFAULT AND PROCEDURAL BAR**

Respondents also argue that Petitioner's state remedies on his claims are either procedurally defaulted (or were procedurally barred on an independent and adequate state ground0, and thus are barred from federal habeas review.

**1.  Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*).  The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

**a.    Exhaustion by Fair Presentation**

Ordinarily, to exhaust his state remedies, the petitioner must have fairly presented his federal claims to the state courts.  "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**Proper Forum** - "In cases not carrying a life sentence or the death penalty,

'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Proper Vehicle** - Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

**Factual Basis** – A petitioner must have fairly presented the operative facts of his federal claim to the state courts as part of the same claim. A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts. Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), cert. denied, 459 U.S. 1219 (1983). And, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

**Legal Basis** - Failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies. *Duncan v. Henry*, 513 U.S. 364, 366 (1995). While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*). "[T]he

17

petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state case analyzing [the] federal constitutional issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003). But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).

**Proper Mode** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005). *But see Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached to petition and incorporated by reference were fairly presented).

### b.    Exhaustion by Actual Consideration

Although fair presentation is the normal mode of establishing exhaustion of state remedies, it is not the only method. Rather, a petitioner's state remedies are exhausted where the state courts have reached and passed on the merits of a federal claim, regardless whether the petitioner had fairly presented the claim to the state court. "It is reasonable to infer an exception [to the fair presentation requirement] where the State has actually passed upon the claim." *Castille v. Peoples*, 489 U.S. 346, 351 (1989). *See*

*Greene v. Lambert*, 288 F.3d 1081, 1086 (9th Cir. 2002) ("exhaustion does not require repeated assertions if a federal claim is actually considered at least once on the merits by the highest state court"); *Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"); *and Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's *sua sponte* consideration of an issue satisfies exhaustion).

On the other hand, actual consideration of the claim is not required. "All exhaustion requires is that the state courts have the opportunity to remedy an error, not that they actually took advantage of the opportunity." *Scott v. Schriro*, 567 F.3d 573, 583 (9th Cir. 2009).

### c.   Available Remedies

In his Reply, Petitioner argues he should be permitted to proceed because he has repeatedly tried to present his claims to the state courts, but has been repeatedly frustrated in doing so, citing *Lee v. Stickman*, 357 F.3d 338 (3d Cir.), *subsequent mandamus proceeding sub nom. In re Lee*, 112 Fed. Appx. 866 (3d Cir. 2004). (Reply, Doc. 19 at 14.)   *Lee* opines: "Federal courts need not defer to the state judicial process when there is no appropriate remedy at the state level or when the state process would frustrate the use of an available remedy." *Id.* at 341.

It is true that it is only "available" and "effective" remedies that must be exhausted. 28 U.S.C. § 2254(b)(1)(B)(i) and (ii). So, as an alternative to presenting his claims to the state courts, a petitioner can satisfy the exhaustion requirement by demonstrating that no effective state remedies remained available at the time the federal habeas petition was filed. *Engle v. Isaac*, 456 U.S. 107, 125 (n. 28)(1982); *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).   If, however, the procedural bar is of the petitioner's own making, then he may be precluded from seeking habeas relief.

> If state remedies are not available because the petitioner failed to comply with state procedures and thereby prevented the highest state court from reaching the merits of his claim, then a federal court

may refuse to reach the merits of that claim as a matter of comity. *Buffalo v. Sunn*, 854 F.2d 1158, 1163 (9th Cir. 1988).

Here, Petitioner fails to show that the failure of the state courts to reach the merits of his claims was caused by anything other than his own failures to comply with the applicable state procedures. The fact that Petitioner may have been persistent, diligent, even dogged, in his failed attempts to obtain review, does not overcome his failures to do so in accordance with independent and adequate state procedural bars.

## 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief. Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts. Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P. 32.4. (Answer, Doc. 13 at 24.)

**Remedies by Direct Appeal** - Under Arizona Rule of Criminal Procedure 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal. Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies in Previous PCR Proceedings** – Under Arizona Rule of Criminal Procedure 32.9(c)(1)(A), a petition for review in a PCR proceeding must be filed "[n]o later than 30 days after the entry of the trial court's final decision." All of Petitioner's prior PCR proceedings were terminated by the trial court long ago. Accordingly, a new

petition for review in those proceedings is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process, a claim may not be brought in a petition for post-conviction relief if the claim was "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(2).

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding." Ariz.R.Crim.P. 32.2(a)(3). Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id*. That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007). Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver. 202 Ariz. at 450, 46 P.3d at 1071. Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly

affected by counsel's ineffective performance. *Id*.

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars. Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule). That time has long since passed.

Exceptions - Rules 32.2 and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h). See Ariz. R. Crim. P. 32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P. 32.4(a) (exceptions to timeliness bar). Petitioner has not asserted that any of these exceptions are applicable to his claims. Nor does it appears that such exceptions would apply. The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the

> defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Here, Petitioner's claims all depend on facts reflected in the state court trial record, and which thus would have been known to Petitioner since trial. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief. Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding. Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

### 3. Procedural Bar on Independent and Adequate State Grounds

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds. "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin,* 562 U.S. 307, 316 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

**Waiver Bar** - Petitioner fails to proffer anything to suggest that Rule 32.2(a) is not an independent and adequate state ground, sufficient to bar federal habeas review of claims a defendant could have but did not raise on direct appeal. The federal courts have routinely held that it is. "Arizona's waiver rules are independent and adequate bases for denying relief." *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir.) *cert. denied*, 135 S. Ct. 710 (2014). *See also Stewart v. Smith*, 536 U.S. 856, 861 (2002) (Arizona's waiver rule is independent of federal law); and *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (adequate because consistently and regularly applied). *See also Martinez v. Ryan*, 566 U.S. 1, 10 (2012) ("There is no dispute that Arizona's procedural bar on successive petitions is an independent and adequate state ground.").

**Timeliness Bar** – Similarly, Petitioner fails to proffer anything to suggest that Rule 32.4 is not an independent and adequate state ground, sufficient to bar federal habeas review of claims a defendant could have but did not raise on direct appeal. The district courts in Arizona have held that it is. *See e.g. Morgal v. Ryan*, 2013 WL 655122, at *16 (D. Ariz. Jan. 18, 2013) *report and recommendation adopted*, 2013 WL 645960 (D. Ariz. Feb. 21, 2013).

**Review Time Bars** – Finally, Petitioner fails to proffer anything to suggest that Arizona Rules of Criminal Procedure 31.3 (time limit for direct appeal) and 32.9(c) (time limit for petition for review) are not independent and adequate state grounds, sufficient to bar federal habeas review of claims presented in an untimely direct appeal or petition for review.

#### 4. Application to Petitioner's Claims

Petitioner has never fairly presented any claims to the Arizona Court of Appeals. His claims are thus either procedurally defaulted, or procedurally barred. This Court need not determine which claims fit in which group to conclude that Petitioner's claims may not be addressed by this Court on the merits.

**Procedurally Barred Claims** - Petitioner's two forays to the Arizona Court of Appeals have each been dismissed as untimely. (*See* Exhibit NN, Order 3/22/17 (dismissing petition for review as untimely); Exhibit LL, Order 3/8/17 (dismissing direct appeal as untimely).) Thus, even if Petitioner had presented any of his claims in those proceedings, they were procedurally barred under Ariz. R. Crim. Proc. 31.3 (direct appeal) or 32.9 (post-conviction review).

In addition, to the extent that Petitioner's current claims were not presented to the Arizona Court of Appeals in his two forays there, but were presented in his second or third PCR petitions, they were procedurally barred in the PCR court on the basis that they were untimely, under Ariz. R. Crim. Proc. 32.4. (*See* Exhibit HH, Order 1/4/17.)

**Procedurally Defaulted Claims** - To the extent that Petitioner's habeas claims were presented in his first or fourth PCR petitions, his failure to timely seek review renders his state remedies procedurally defaulted by failure to timely seek review, pursuant to Arizona Rule of Criminal Procedure 32.9.

To the extent that Petitioner has never raised his habeas claims to the state courts, they are now procedurally defaulted, for the reasons set forth in Section III(B)(2).


#### 5. Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default. *Thomas v. Lewis*, 945 F.2d 1119,

1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner argues that this Court should find cause to excuse his procedural defaults based on his determined and diligent attempts to obtain review by the state courts, in the face of his *pro se*, untrained status with limited legal resources.  (Reply, Doc. 19 at 15-16).

**Diligence** – While diligence is relevant to a finding that some external circumstance was the  but-for cause of a petitioner's failure to properly exhaust his state remedies, diligence itself is not sufficient to show cause.  Diligence is not external to a petitioner, but internal.

***Pro Se* Status** - The "cause and prejudice" standard is equally applicable to pro se litigants, *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990); *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986), whether literate and assisted by "jailhouse lawyers", *Tacho*, 862 F.2d at 1381; illiterate and unaided, *Hughes*, 800 F.2d at 909, or non-English speaking, *Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (9th Cir. 1988), *cert. denied*, 490 U.S. 1100 (1989).

**Ineffective Jailhouse Lawyers** - Petitioner points to failings by his jailhouse lawyers.  Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).  However, to meet the "cause" requirement, the ineffective assistance of counsel must amount to an independent constitutional violation.  *Id*.

26

Accordingly, where no constitutional right to an attorney exists, ineffective assistance will not amount to cause excusing the state procedural default. *Id.*   Petitioner proffers nothing to suggest that he had a constitutional right to counsel in any of the proceedings where he was assisted by another inmate.  Nor does he suggest that such a right would extend to a right to effective assistance from a fellow inmate.

**Limited Legal Resources** – Petitioner argues that he had "improper facts by reason of a lack of legal resources." (Reply, Doc. 19 at 18.)  Because Petitioner fails to point to a fact (as opposed to a legal argument) that was unavailable to him, the undersigned understands this argument to be a claim that Petitioner could not properly exhaust his state remedies because he did not have adequate legal research available to him.

A *pro se* petitioner may be able to establish cause if he can establish a lack of access to the law, as opposed to a lack of knowledge of the law.  *See e.g. Dulin v. Cook*, 957 F.2d 758 (10th Cir. 1992) (remanding for a determination of cause where a pro se petitioner's incarceration in Nevada precluded access to Utah legal materials required to challenge a Utah conviction).  *Cf. Whalem/Hunt v. Early*, 233 F.3d 1146 (9th Cir. 2000) (holding lack of library materials may establish an "impediment" which would toll the statute of limitations applicable to habeas petitions).  The petitioner must establish, however, that the lack of access resulted in an inability to assert his claims.  *See e.g. Thomas v. Lewis*, 945 F.2d 1119 (9th Cir. 1991) (finding no "cause" where despite lack of resources generally, *pro se* prisoner had not shown personal deprivation, and had managed to file other adequate petitions.)

Petitioner fails to suggest what legal materials were not available to him, but necessary to his presentation of his claims.  To the extent that Petitioner simply took too long to make use of the research materials available to him, his claim is particularly suspect.   Here: (1) Petitioner was represented by counsel at the time his claims should have initially been brought, in his first, of-right PCR proceeding; (2) Petitioner was afforded some five months by the PCR court to seek review in that proceeding, where all

he had to do was reiterate his claims, and the purported error by the PCR Court in his Petition for Review; (3) Petitioner presented at least some of his claims, but simply did so in an untimely or improper fashion; and (4) to the extent that Petitioner had previously presented his claims, they cannot be claimed to have been later made unavailable.

Therefore, Petitioner has failed to show that the necessary research/arguments were unavailable to him to present those claims.

**Summary re Cause and Prejudice** – Based upon the foregoing, the undersigned concludes that Petitioner has failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

### 6.  Actual Innocence

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it

is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A showing that a reasonable doubt exists in the light of the new evidence is not sufficient. Rather, the petitioner must show that no reasonable juror would have found the defendant guilty. *Id*. at 329. This standard is referred to as the "*Schlup* gateway." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Moreover, to pass through the *Schlup* gateway, not just any evidence of innocence will do; the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner does generally assert that he was not guilty. But those claims are supported only by Petitioner's own protestations of innocence. To establish a claim of actual innocence, a Petitioner must support his claim with "new reliable evidence." *Schlup*, 513 U.S. at 324. Petitioner's own, self-serving, post-trial protestations of innocence are not the type of reliable evidence which create a likelihood that no reasonable juror would have convicted him.

Accordingly his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

## C. OTHER DEFENSES

Because the undersigned concludes that Petitioner's Petition is plainly barred by the statute of limitations, and either procedurally defaulted or procedurally barred, Respondents other defenses are not reached. Thus the undersigned does not resolve whether Grounds Two and Three can be liberally construed to assert a cognizable federal ground for relief, nor whether Petitioner's plea waived his claim in Ground One.

## IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires

that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed April 17, 2017 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI.  EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

In addition, the parties are cautioned Local Civil Rule 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated: February 22, 2018

17-1132r RR 18 02 14 on HC.docx

James F. Metcalf
United States Magistrate Judge

31